1
2
3
4
5
6
7
8    IN THE UNITED STATES DISTRICT COURT
9    FOR THE NORTHERN DISTRICT OF CALIFORNIA

10
11   GERRY GP PHONGBOUPHA,            )   No. C 12-1025 RMW (PR)
                                      )
12              Petitioner,           )   ORDER DENYING PETITION FOR
                                      )   WRIT OF HABEAS CORPUS;
13       v.                           )   DENYING CERTIFICATE OF
                                      )   APPEALABILITY
14   A. HEDGPETH, Warden,             )
                                      )
15              Respondent.           )
     _____)
16

17       Petitioner, a state prisoner proceeding pro se, filed a petition for a writ of habeas corpus
18  pursuant to 28 U.S.C. § 2254. The court ordered respondent to show cause why the petition
19  should not be granted. Respondent has filed an answer addressing the merits of the petition, and
20  petitioner has filed a traverse. Having reviewed the briefs and the underlying record, the court
21  concludes that petitioner is not entitled to relief based on the claims presented and DENIES the
22  petition.

23                                     **BACKGROUND**

24       Petitioner was charged and convicted by a jury of first degree murder, three counts of
25  attempted murder, and two counts of assault with a semiautomatic firearm. The jury found true
26  several firearm and great bodily injury enhancements. On August 1, 2008, the trial court
27  reduced the first degree murder conviction to a second degree murder conviction, and sentenced
28

petitioner to a term of seventy-four years in state prison. On August 12, 2010, the California Court of Appeal affirmed. On November 23, 2010, the California Supreme Court denied a petition for review. Petitioner filed the instant federal habeas petition on February 29, 2012.

As all the details of petitioner's crime are not essential to the disposition of his federal habeas petition, the court will summarize the events below and expand on the facts as needed in the discussion of the claims.

At trial, the evidence showed that, in the early morning hours of March 21, 2005, the nightclub, The Café Cocomo, in San Francisco, closed for the night and approximately 150-200 people exited. (Resp. Ex. 7 at 1.) One man, Kevin Martin, walked by a parked silver Range Rover, looked through the Range Rover's open rear hatch and admired the audio equipment in it. (Id. at 2.) A man in the back of the Range Rover gave Martin a disrespectful look, which Martin returned. (Id.) The occupants of the Range Rover exited the car to confront Martin. (Id. at 2-3.) Many of the people standing around, including the Range Rover occupants, were Asian-American. (Id.) A crowd began to gather and Jeremy Taylor, a witness, saw the driver of the Range Rover go around to the trunk and lean in. (Id. at 3.) Taylor testified that it looked like the driver was concealing something and Taylor assumed it was a gun. (Id.) Another witness saw an Asian man go around to the trunk of the car and close it. (Id.) That witness then saw a gun handle sticking out of the man's waistline. (Id.)

At this point, approximately 20 people were gathered around with two groups facing each other from a distance of approximately 3-5 feet and shouting at each other. (Id. at 3-4.) Ryan Geter, his brother, and James Cross, friends of Martin's, had gone over to help Martin. Cross believed a fight might break out and took his shirt off in preparation for that fight. Cross also verbally challenged petitioner's group and began to approach them. Between four to six gun shots then rang out. (Id. at 4.) In general, witnesses testified that it was the driver of the Range Rover who fired, the shooter was looking down at the ground or the shooter's eyes were closed, and the shooter had held the gun up over his head, firing over the heads of the Asian men standing in front of him. (Id. at 4-5.)

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\RMW\HC.12\Phongboupha025denhc.wpd

As a result of the shooting, one person died, and Geter, Cross, and Martin, were injured. Petitioner's uncle, Khong Phongboupha, was also shot.

## DISCUSSION

A.  Standard of Review

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, Williams v. Taylor, 529 U.S. 362, 384-86 (2000), while the second prong applies to decisions based on factual determinations, Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if the state court correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411.

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\RMW\HC.12\Phongboupha025denhc.wpd

3

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El, 537 U.S. at 340.

In determining whether the state court's decision is contrary to, or involved an unreasonable application of, clearly established federal law, a federal court looks to the decision of the highest state court to address the merits of a petitioner's claim in a reasoned decision. LaJoie v. Thompson, 217 F.3d 663, 669 n.7 (9th Cir. 2000). Here, that decision is the California Court of Appeal.

B.  Petitioner's Claims

As grounds for federal habeas relief petitioner claims that: (1) petitioner's right to due process was violated when he was not allowed to be present or consult with counsel when the trial judge had an ex parte meeting with Juror Number 7; (2) the trial court improperly coerced a jury verdict after learning that they were deadlocked by giving them a supplemental instruction; (3) the "kill zone" instruction to the jury should not have been given with respect to the attempted murder charges in counts 2, 3, and 4; and (4) the trial court erred in admitting hearsay testimony, in violation of his right to due process.

1.  Ex parte meeting with Juror Number 7

Petitioner claims that he was deprived of his right to due process when he was not present when the judge had an ex parte meeting and communicated with Juror Number 7. The record shows that, on the third day of jury deliberations, Juror Number 7 asked to speak with the judge privately. (Resp. Ex. 7 at 22.) Both counsel agreed to allow the meeting. When the trial judge resumed the bench after the meeting, the judge informed counsel that the juror had not expressed any views on the evidence, but had described the process the jurors were using to deliberate and expressed his dissatisfaction with it. (Id.) The judge told counsel that he informed Juror

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\RMW\HC.12\Phongboupha025denhc.wpd

4

Number 7 that the process was acceptable, verified that Juror Number 7 could participate in it, and instructed him to do so. (Id.) Neither counsel objected to the conversation.[1] (Id.)

The California Court of Appeal rejected this claim. Specifically, it stated:

> In the present case, appellant's counsel expressly consented to the communication. The judge indicated immediately after the ex parte meeting that the juror had not expressed any views on the evidence, and that the discussion had concerned only the process that the jury had adopted to organize its deliberations. [FN23 omitted.] Appellant does not contend that anything the judge said to Juror No. 7 incorporated an error of law. There is nothing in the record to indicate that the judge or counsel knew or could have known, at the time of the ex parte meeting, that Juror No. 7's views regarding the substantive issues in the case were different from those of the other jurors.
>
> Given all of the above facts surrounding the ex parte meeting, appellant has not demonstrated how his personal presence, or that of his trial counsel, would have contributed to the overall fairness of the proceeding. Under those circumstances, it was within the scope of his counsel's authority to consent to the ex parte meeting, and even if not, any error was harmless beyond a reasonable doubt.

(Resp. Ex. 7 at 26.)

The Supreme Court has recognized that "the right to personal presence at all critical stages of the trial . . . [is a] fundamental right[ ] of each criminal defendant." Rushen v. Spain, 464 U.S. 114, 117 (1983). The right derives from the Confrontation Clause of the Sixth Amendment and the Due Process Clauses of the Fifth and Fourteenth Amendments. Campbell v. Wood, 18 F.3d 662, 671 (9th Cir. 1994) (en banc). The Confrontation Clause protects a defendant's right to face his accusers and applies to every stage of a trial. See Illinois v. Allen, 397 U.S. 337, 338 (1970); see also United States v. Napier, 463 F.3d 1040, 1042 (9th Cir. 2006) (holding Sixth Amendment protects defendant's right to be present at sentencing). Due process, on the other hand, protects a defendant's right to be present "at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the

---

[1] The record indicates that the judge and counsel had subsequent conversations with the foreperson of the jury, Juror Number 7, and other individual jurors. (Id. at 22-25.) However, because petitioner's claim only involves the one ex parte meeting with Juror Number 7, the court will not discuss the details of the other conversations for the purposes of this claim. However, those subsequent conversations are relevant to petitioner's claim regarding a supplemental jury instruction, which is addressed below.

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\RMW\HC.12\Phongboupha025denhc.wpd

procedure," see Kentucky v. Stincer, 482 U.S. 730 (1987), and not every event that occurs during such a proceeding is necessarily "critical," see e.g., id. at 746 (finding no due process violation based on defendant's exclusion from competency hearing of two child witnesses in sexual abuse case, where no questions regarding substantive testimony were asked); see also United States v. Mitchell, 502 F.3d 931, 973 (9th Cir. 2007) (en banc) (finding no violation under Due Process Clause or Confrontation Clause where trial judge met ex parte with Marshal on two occasions, the first to discuss security concerns regarding transfer for change of venue and thereafter to discuss defendant's announced refusal to be present at penalty phase).

Moreover, the Supreme Court has never held that the exclusion of a defendant from a critical stage of the trial constitutes structural error, see Campbell v. Rice, 408 F.3d 1166, 1172 (9th Cir. 2005) (en banc), and the Ninth Circuit has held the right to be present at all critical stages is subject to harmless error analysis, see id. Moreover, to obtain habeas relief, the trial error must have "'had substantial and injurious effect or influence in determining the jury's verdict.'" Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).

Here, even assuming that there was error, the state court's finding that any error was harmless is entitled to a presumption of correctness. See Rushen, 464 U.S. at 120. In light of the presumption of correctness of the state court's finding and the lack of any indication that petitioner's presence at the meeting with Juror Number 7 would have made any appreciable difference, the court finds that the state court's conclusion that any error in petitioner's absence from the meeting was harmless. In addition, it did not have a substantial or injurious effect in the jury's verdict.

Accordingly, petitioner is not entitled to habeas relief on this claim.

2. Supplemental jury instruction

Petitioner claims that the court violated his right to due process and to a jury trial by giving a supplemental instruction. Respondent argues that the claim is procedurally barred, and alternatively, that the instruction was a correct statement of the law.

Here, the state court summarized the events that occurred just after the trial court had its ex parte conversation with Juror Number 7:

> That same afternoon, the foreperson of the jury sent the court a note, asking to meet with the trial judge "to discuss the issue of Juror No. 7's failure to understand the jury instructions generally, and in particular, the instruction related to limiting our fact finding to the evidence presented, for example, the introduction of a second shooter." In response, the judge met with the foreperson and both counsel in chambers. The foreperson then explained that Juror No. 7 had been speculating about possible scenarios that were not supported by the evidence, such as the idea that appellant was covering for someone else in the car to whom he had transferred the gun before the shots were fired; the possibility that appellant had been under the influence of marijuana, and the speculation that witnesses had been coached. The foreperson also opined that Juror No. 7 appeared not to understand the concept of the presumption of innocence, and had expressed the view that the jury needed to raise issues that the defense had not raised, and to prove appellant innocent because defense counsel had failed to do so.
>
> After hearing what the foreperson had to say, and consulting with both counsel, the trial judge decided to meet with Juror No. 7 again, this time on the record and in the presence of counsel, and then to send Juror No. 7 home and speak with the other jurors as needed. During the ensuing meeting (the afternoon meeting), Juror No. 7 explained that he had developed a theory about what happened, but that the other jurors had rejected it on the ground that it was not based on the trial evidence. He indicated that he wanted clarification regarding whether he could "use my argument as evidence or it's not admissible," explaining that if his argument was not valid, "then I'm forced to agree with them [the other jurors] judging by the evidence," but that "[i]f my argument is evidence, then I have a problem."
>
> The trial judge then sent Juror No. 7 home for the day and interviewed the other jurors individually, on the record and in the presence of counsel. During these interviews, the jurors generally confirmed that Juror No. 7 continually expressed doubts, speculated about facts outside the evidence, and kept wanting to discuss the possibility that there was a second shooter. Also, one juror explained that Juror No. 7 was unwilling to follow the methodical decisionmaking approach that the rest of the jury had agreed to adopt.
>
> After the jury interviews, the trial judge suggested that counsel review the case law on discharging jurors, and adjourned for the day. The next morning, both counsel agreed with the judge that the jury should be given additional instructions, and discussed what their content would be. Appellant's counsel objected to reopening argument by counsel, but did not object to the judge's giving supplemental instructions on reasonable doubt, evidence, and the deliberation process, as the judge had indicated he intended to do.
>
> After this discussion, during the morning of April 11, 2008, the judge reinstructed the jury on the presumption of innocence and reasonable doubt. He reminded them that they should not hesitate to change their minds if they became convinced that they were wrong, but should not do so just because the other jurors disagreed, and that each of them was obligated to decide the case for themselves, but only after discussing the evidence with the other jurors. He defined what is included in the evidence, and reiterated that the opinions expressed by counsel were not evidence. He explained that "in deciding cases, the jurors' minds are automatically going to consider[ ] possibilities, all

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\RMW\HC.12\Phongboupha025denhc.wpd

7

possibilities, and even consider guesses and imagination." He clarified that "[a] guess is forming an opinion on little or no evidence or . . . for good but not decisive reasons," or "solving a problem at random or by conjecture," and that "[i]magination is a mental image of something not present to the senses, . . . or not previously known or experienced." He then repeated the instruction that the evidence need not eliminate all possible doubt, stressing that "in deciding whether the [P]eople have proved their case beyond a reasonable doubt, you must impartially compare and consider all the evidence, not guesses or imagination, that was received throughout the trial." After repeating the definition of reasonable doubt, and suggesting that the jurors reread the instruction if they had any questions, he directed them to resume deliberations. Appellant's counsel did not object to any of the contents of the supplemental instruction as given by the court.

Shortly after 2:00 p.m. that afternoon, Juror No. 7 sent the judge a note stating that he was "at an impasse to the verdict of guilt based on his reasonable doubt that can't be worked out with fellow jurors. Needs to know law regarding being replaced by an alternate due to his impasse." It had been apparent earlier that Juror No. 7 was at odds with the other jurors, and that the dispute resolved around the basis on which a reasonable doubt could legitimately be entertained. This was the first time the court and counsel were told explicitly that the other jurors were prepared to return a guilty verdict. Upon learning the contents of Juror No. 7's note, appellant's counsel promptly moved for a mistrial, but the motion was denied.

The trial judge then interviewed Juror No. 7 again in the presence of counsel. The juror indicated that the other jurors listened to the tape recordings that had been received into evidence, and appeared not to care if Juror No. 7 listened to them, or what were Juror No. 7's views on the evidence. Juror No. 7 explained that he did not believe he could change his opinion, and that he did not know what would be accomplished by his continuing to review the evidence. As he left the room, he commented that his "mind is being closed," and that he should perhaps be replaced.

The jury foreperson told the judge that the jury was continuing to review the evidence, and had taken a poll with respect to certain factual findings, with an 11-to-1 result. The court then recessed the jury until the following Monday, April 14, 2008. When court reconvened, appellant's counsel again moved unsuccessfully for a mistrial based on the jury deadlock. Over the objection of appellant's counsel, the judge again interviewed Juror No. 7 in the presence of counsel. This time, Juror No. 7 expressed a willingness to continue to review the evidence and discuss its significance with the other jurors. The judge reaffirmed that by directing Juror No. 7 to continue to deliberate, he did not intend to influence Juror No. 7's ultimate decision on the case. The jury then resumed deliberations.

In the middle of that day, the jury requested a readback of the testimony regarding Giang's statements to the police. At 4:55 p.m. that afternoon, the jury reached a partial verdict, finding appellant guilty of the murder of Mendoza. The following day, it returned guilty verdicts on the remaining counts. Polling confirmed all of the verdicts.

(Resp. Ex. 7 at 22-25.)

A federal court will not review questions of federal law decided by a state court if the decision also rests on a state law ground that is independent of the federal question and adequate

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\RMW\HC.12\Phongboupha025denhc.wpd

8


to support the judgment. Coleman v. Thompson, 501 U.S. 722, 729-30 (1991). In cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. Id. at 750.

The California Court of Appeal concluded that defense counsel waived this issue on appeal by failing to object or ask for a further clarifying instruction at any time before or after the supplemental instruction was given. (Resp. Ex. 7 at 27.) It relied on People v. Marks, 31 Cal.4th 197, 236-37 (2003), to support its conclusion. In Marks, the state court held that the defendant waived his claim that the judge should have answered a jury question during deliberations differently because defendant failed to object or request further clarification. Id.

The Ninth Circuit has recognized and applied California's contemporaneous objection rule in affirming denial of a federal petition on grounds of procedural default where there was a complete failure to object at trial. See Inthavong v. Lamarque, 420 F.3d 1055, 1058 (9th Cir. 2005). Here, the record shows that prior to giving the supplemental instruction, counsel both agreed that the jury should be given an additional instruction and although defense counsel objected to reopening argument by counsel, he did not object to giving supplemental instructions on reasonable doubt, evidence, and the deliberation process. (Resp. Ex. 7 at 23.) After the trial court gave the supplemental instruction, defense counsel raised no objection to the contents of the instruction. (Id.)

Thus, the California Court of Appeal's conclusion that petitioner waived this claim by failing to object is an independent and adequate state bar. See, e.g., Pickett v. Duncan, No. 01-17393, 80 Fed. Appx. 548, 550 (9th Cir. 2003) (unpublished memorandum disposition) (relying on state court's citation of Marks to confirm that California law that failure to object waives a claim is independent and adequate); Escobar v. Janda, No. 13-1179 PSG (DFM), 2014 WL

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\RMW\HC.12\Phongboupha025denhc.wpd

9

1  4384719, at *6-*7 (C.D. Jan. 30, 2014) (finding California Court of Appeal's conclusion that

2  petitioner waived claim by failing to object at trial was independent and adequate state bar).

3     Petitioner provides no argument demonstrating cause for the default or actual prejudice

4  as a result of the alleged violation of federal law, or demonstrating that the failure to consider the

5  claims will result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 750.

6     Accordingly, the court finds that this claim is procedurally barred.

7     Alternatively, the state court's alternative conclusion that the supplemental instruction

8  was proper is not contrary to or an unreasonable application of Supreme Court law. "Any

9  criminal defendant . . . being tried by a jury is entitled to the uncoerced verdict of that body."

10 Lowenfield v. Phelps, 484 U.S. 231, 241 (1988). Thus, an instruction is unconstitutionally

11 coercive if it denies the defendant the due process right to a trial by a fair and impartial jury.

12 DeWeaver v. Runnels, 556 F.3d 995, 1007 (9th Cir. 2009). Federal courts reviewing an Allen

13 charge, see Allen v. United States, 164 U.S. 492, 501-02 (1896), given by a state court must

14 consider the supplemental instruction "'in its context and under all circumstances,'" Lowenfield,

15 484 U.S. at 237 (citation omitted). The Ninth Circuit has said that in a habeas case involving a

16 state conviction the questions for the court are (1) whether the applicable state court looked at

17 the totality of the circumstances in determining if the instruction was coercive; and (2) whether

18 that court's determination on the coercion question was reasonable. Parker v. Small, 665 F.3d

19 1143, 1148 (9th Cir. 2011) (per curiam).

20    Here, the California Court of Appeal reasoned:

> [E]ven if not waived, we disagree that the supplemental instruction had the effect of coercing Juror No. 7 to change his vote. As already noted, at the time the instruction was given, the trial judge knew that Juror No. 7 was having difficulty participating in the deliberations, but had not yet been given any information about whether or how the jury had voted, much less told that there was an actual deadlock. More importantly, the instruction reminded the jurors that they should not "change your mind just because other jurors disagree with you," and that "[e]ach of you must decide the case for yourself." An instruction of this type, which does not single out the minority jurors and urge them alone to reconsider their views, is not coercive. (See, e.g., Lowenfield v. Phelps (1988) 484 U.S. 231, 235-241.)
>  Also, contrary to appellant's contention, we see nothing in the content of the instruction that is inconsistent with the applicable law. Most of the

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\RMW\HC.12\Phongboupha025denhc.wpd

> instruction was taken from the standard instructions on deliberations and on reasonable doubt. These were supplemented with definitions of "guesses" and "imagination" that the judge later explained were taken from the dictionary. The portion of the instruction telling the jury not to rely on guesses or imagination was consistent with case law, which states that in order to be "reasonable," inferences "may not be based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guess work," and that inferences must be "drawn from evidence rather than . . . a mere speculation as to probabilities without evidence. [Citation.]" (People v. Morris (1988) 46 Cal.3d 1, 21, overruled on other grounds in In re Sassounian (1995) 9 Cal.4th 535, 543-545 & fns. 5, 6.) For all of the foregoing reasons, we find no reversible error in the giving of the supplemental instruction.

(Resp. Ex. 7 at 27-28.)

The state appellate court looked at the totality of the circumstances, and evaluated the correctness of the law as stated in the supplemental instruction. The instruction did not single out Juror Number 7 and was a correct statement of the law. Even though the trial court knew there was a single juror who was having trouble deliberating, the record shows that the supplemental instruction did not single that juror out nor persuade him to change his mind unless the evidence called for it. Under the circumstances, as well as the content of the supplemental instruction, this court cannot say that the state court's conclusion was contrary to Allen or Lowenfield, or that it was objectively unreasonable. See Parker, 665 F.3d at 1148 ("As long as the California Court of Appeal reviewed all the facts, and considered the supplemental charge in its context and under all the circumstances in holding that it was not coercive, then, in the absence of Supreme Court authority to the contrary, this Court must give deference to the California Court of Appeal's judgment.").

Accordingly, this claim is denied.

3. <u>Kill zone instruction</u>

Petitioner claims that the trial court violated his right to due process by instructing the jury on the "kill zone," with respect to Counts 2, 3, and 4, on the charges of attempted murder. Specifically, petitioner alleges that the instruction improperly permitted the jury to convict him of the attempted murder of Geter and Martin without finding that petitioner intended to kill either Geter or Martin, or everyone within range of the gunfire. Petitioner argued that the

instruction allowed the jury to convict him of attempted murder if the jury found that petitioner merely intended to *shoot* everyone in the kill zone rather than *kill* everyone in the kill zone. (Emphasis added.)

The trial court instructed the jury with a modified version of CALCRIM No. 600:

> "A person may intend to kill a specific victim or victims and at the same time kill everyone in a particular zone of harm also called the kill zone. In order to convict the Defendant of the attempted murder of Ryan Geter in count 2, and Kevin Martin in count 3, [the][P]eople must prove that the Defendant not only intended to kill James Cross in count 4, but also, either intended to kill Mr. Geter and Mr. Martin or intended to kill everyone within the kill zone. [¶] If you have a reasonable doubt whether the defendant intended to kill Mr. Geter and Mr. Martin or intended to kill James Cross by shooting[2] everyone in the kill zone, then you must find the defendant not guilty on all counts of attempted murder. . . ."

(Resp. Ex. 7 at 16, n.19.)

Here, the instruction as given clearly directs the jury to convict petitioner of the attempted murder of Geter and Martin if the jury found that petitioner intended to kill Cross, and either (1) intended to kill Geter and Martin, or (2) intended to kill everyone in the kill zone. Petitioner's argument that the instruction was not an accurate statement of the law was reasonably rejected by the state court.

Petitioner's related argument that the trial court's substitution of the word "shooting" for "killing" changed the elements of the crime is unavailing. The California Court of Appeal rejected this argument by stating:

> Reading the instructions as a whole, however, we do not find it reasonably probable that the jury could have convicted appellant of attempted murder as to Ryan and Martin unless it found that appellant intended to kill, not just shoot, everyone in the kill zone. This is particularly true in light of the prosecutor's argument, which made it clear that if appellant was just "shooting into the crowd," that would only be assault, not attempted murder, and that in order to convict appellant of attempted murder as to Ryan and Martin, the jury had to find that appellant intended not just to shoot, but to kill everyone in the crowd surrounding Cross. Accordingly, we decline to find reversible error in the trial court's use of "shoot" rather than "kill" in one sentence of an otherwise unambiguous and correct instruction.

(Resp. Ex. 7 at 18-19.)

---

[2] CALCRIM No. 600 uses the word "killing" rather than "shooting."

To obtain federal collateral relief for errors in the jury charge, a petitioner must show that "'the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" Estelle v. McGuire, 502 U.S. 62, 71-72 (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)). The instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. Id. Petitioner also must show actual prejudice from the error, i.e., that the error had a substantial and injurious effect or influence in determining the jury's verdict, before the court may grant federal habeas relief. Calderon v. Coleman, 525 U.S. 141, 146 (1998) (citing Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)).

As an initial matter, the state court ruled that the kill zone instruction adequately sets forth California law regarding the offense; that decision is binding on this court. See Bradshaw v. Richey, 546 U.S. 74, 76 (2005). Further, here, it is not reasonably likely that the jury applied the instruction in a way that violated the Constitution. Though the court substituted the word "shoot" for "kill" in one sentence of the modified instruction, considering the instructions as a whole, the state court's conclusion was not contrary to, or an unreasonable application, application of Supreme Court law.

Moreover, even assuming there was error, it did not have a substantial or injurious effect on the jury's verdict. The prosecutor explained to the jury that it could not convict petitioner of the attempted murder of Geter and Martin if it found that petitioner was merely shooting into the crowd without the intent to kill everyone in the crowd surrounding Cross. That explanation, combined with evidence in the record that petitioner did intend to kill everyone in the crowd in order to get to Cross by shooting in rapid succession 4 to 6 times, supports rejection of petitioner's claim.

Given the high deference accorded to the state appellate court's analysis here, the state court's rejection of this claim was not contrary to, or an unreasonable application, or clearly established Supreme Court law.

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\RMW\HC.12\Phongboupha025denhc.wpd

4.	Admission of Khong's statement

Petitioner alleges that his right to due process was violated when the trial court allowed evidence to be admitted that petitioner's uncle, Khong Phongboupha, said that "stupid [petitioner]" shot Khong with a gun. Petitioner appears to only challenge the admission of this statement as unreliable and prejudicial because there was no evidence that Khong saw who the shooter was.

The California Court of Appeal recognized that petitioner conceded that the statement was not "testimonial" within the meaning of Crawford v. Washington, 541 U.S. 36 (2004), and thus petitioner was not arguing that the admission of the statement violated the Confrontation Clause. The state appellate court concluded that, pursuant to state law, the admission of the statement was proper.

The admission of evidence is not subject to federal habeas review unless a specific constitutional guarantee is violated or the error is of such magnitude that the result is a denial of the fundamentally fair trial guaranteed by due process. See Henry v. Kernan, 197 F.3d 1021, 1031 (9th Cir. 1999). The Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009) (finding that trial court's admission of irrelevant pornographic materials was "fundamentally unfair" under Ninth Circuit precedent but not contrary to, or an unreasonable application of, clearly established Federal law under § 2254(d)); accord Gastelum v. Paramo, 2014 WL 6841646, at *12-*13 (C.D. Cal. Dec. 3, 2014) (relying on absence of clearly established Supreme Court law to uphold state court's decision that there was no due process violation when the trial court admitted alleged unreliable statements that implicated the petitioner as the shooter).

In addition, admission of this statement resulted in no substantial or injurious effect on the jury's verdict. Evidence was also admitted that petitioner made several phone calls from jail and stated, "I killed him last night;" another phone call revealed an unidentified male telling petitioner that he was "hot," "on fire," and that petitioner needed to sell his car because

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\RMW\HC.12\Phongboupha025denhc.wpd

14

1  petitioner "shot all the wrong people," and "hit like six people."  (Resp. Ex. 2 at AGO 77, 80.)
2  Moreover, eyewitnesses described the shooter as the driver of the Range Rover, and petitioner fit
3  the description of those observations.
4    Accordingly, the state court's conclusion was not contrary to or an unreasonable
5  application of clearly established Supreme Court law.

## CONCLUSION

7    The petition for a writ of habeas corpus is DENIED.
8    The federal rules governing habeas cases brought by state prisoners require a district
9  court that denies a habeas petition to grant or deny a certificate of appealability ("COA") in its
10 ruling.  Petitioner has failed to make a substantial showing that his claims amounted to a denial
11 of his constitutional rights, or demonstrate that a reasonable jurist would find the denial of his
12 claims debatable or wrong.  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  Accordingly, a COA
13 is DENIED.
14    The clerk shall terminate all pending motions, enter judgment, and close the file.
15    IT IS SO ORDERED.

16 DATED: _____        *Ronald M. Whyte*
17                  _____
                   RONALD M. WHYTE
18                 United States District Judge

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\RMW\HC.12\Phongboupha025denhc.wpd

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

GERRY PHONGBOUPHA,

        Plaintiff,

  v.

A. HEDGPETH et al,

        Defendant.

Case Number: CV12-01025 RMW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on February 10, 2015, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Gerry GP Phongboupha G-29087
Salinas Valley State Prison
PO Box 1050
Soledad, CA 93960

Dated: February 10, 2015

                                    Richard W. Wieking, Clerk
                                    By: Jackie Lynn Garcia, Deputy Clerk